FILED
MAR 06 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

'08 MJ 8206

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No.: |
| Plaintiff, | COMPLAINT FOR VIOLATION OF |
| v. | 21 U.S.C. § 952 and 960 |
| Maria Laura LAMUG (1) | Importation of a Controlled Substance (Felony) |
| Jesus Juan Manuel ORTIZ (2) | |
| Defendant. | |

The undersigned complainant being duly sworn states:

That on or about March 5, 2008, within the Southern District of California, Maria Laura LAMUG and Jesus Juan Manuel ORTIZ did knowingly and intentionally import approximately 10.60 kilograms (23.32 pounds) of methamphetamine, a Schedule II Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960.

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Douglas Struckmeyer, Special Agent
U.S. Immigration & Customs Enforcement

SWORN TO, BEFORE ME, AND SUBSCRIBED IN MY PRESENCE THIS 6TH DAY OF MARCH, 2008.

PETER C. LEWIS
U.S. MAGISTRATE JUDGE

UNITED STATES OF AMERICA
v.
Maria Laura LAMUG (1)

Jesus Juan Manuel ORTIZ (2)

## STATEMENT OF FACTS

This complaint is based upon the personal observations, investigation and information provided to U. S. Immigration and Customs Enforcement Special Agent Douglas Struckmeyer.

On March 5, 2008, Maria Laura LAMUG and Jesus Juan Manuel ORTIZ entered the United States at the Calexico, California, West Port of Entry. LAMUG was the driver and ORTIZ was the passenger of a 2003 Toyota Camry registered to LAMUG.

At the time of their entry, Customs and Border Protection Officer (CBPO) E. Mayoral was assigned to primary vehicle inspection lane 2. At that time, Canine Enforcement Officer (CEO) J. Jones was also conducting a pre-primary sweep of vehicles using his Narcotic Detector Dog (NDD). As the vehicle driven by LAMUG approached the inspection booth of lane 2, CEO Jones motioned to CBPO Mayoral that he wanted the vehicle referred to vehicle secondary for further inspection. CBPO Mayoral conducted a primary inspection, which included receiving a negative customs declaration from LAMUG and ORTIZ, and then referred them for a secondary inspection.

CBPO O. Oceguera performed a secondary inspection of the vehicle. CBPO Oceguera first received a negative customs declaration from LAMUG and ORTIZ. He then conducted a physical inspection of the interior of the vehicle. During this

inspection, he observed what he identified as a compartment built into the dash of the vehicle.

Further inspection of the vehicle revealed the presence of a non-factory compartment built into the vehicle's dash. A total of 18 packages were found concealed within the compartment. The combined weight of the packages was approximately 10.60 Kilograms (23.32 pounds). A sample taken from one of the packages field tested positive for methamphetamine.

Special Agent's (S/A) Douglas Struckmeyer and Thomas Behm interviewed LAMUG and ORTIZ. S/A Struckmeyer furnished each individual with their constitutional rights per Miranda in English with S/A BEHM present. LAMUG orally waived her rights, as well as signing the written waiver of rights, agreeing to make a statement.

LAMUG stated that she was approached by an individual who asked her if she would be willing to smuggle a load of a controlled substance into the United States. After she agreed to smuggle the controlled substance, the individual gave her contact information to another individual, who later called her and instructed her to bring her vehicle to Mexicali. She left the vehicle with the individual in Mexicali for approximately four days before he contacted her again and instructed her to return to Mexicali and pick up her vehicle. When she returned to Mexicali, the individual instructed her to drive the vehicle into the United States and told her that he would call her with further instructions after she successfully crossed the border.

LAMUG stated that she was going to be paid $1,600 for smuggling the controlled substance into the United States and that she believed the vehicle contained marijuana. She also stated that she told ORTIZ the details of the plan prior to driving to Mexicali to pick up the loaded vehicle.

ORTIZ did not make an initial statement, but he later made a spontaneous statement that he was stupid for doing this and that people had warned him not to but he did it anyway.